UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| CHRISTOPHER JEWELL, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 1:19-cv-00744-SEB-MJD |
| | ) |
| WEXFORD OF INDIANA, LLC, | ) |
| DUSHAN ZATECKY, | ) |
| PAUL TALBOT, | ) |
| SHEPHERD,[1] | ) |
| LAURA BODKIN, | ) |
| MICHELLE LAFLOWER, | ) |
| NIKKI TAFOYA, | ) |
| | ) |
| Defendants. | ) |

**ORDER ON MOTIONS FOR SUMMARY JUDGMENT AND RELATED MOTIONS AND DIRECTING ENTRY OF FINAL JUDGMENT**

Plaintiff Christopher Jewell brought this civil rights action pursuant to 42 U.S.C. § 1983. Mr. Jewell alleges that the defendants were deliberately indifferent to his gastroesophageal reflux disease (GERD) and Barrett's esophagus. Before the Court are the defendants' motions for summary judgment and motion to strike Mr. Jewell's surreply and Mr. Jewell's renewed motion for counsel and jury trial. For the reasons explained in this Order, the defendants are entitled to summary judgment on all of Mr. Jewell's claims.

---

[1] The **clerk is directed** to update the docket to reflect the correct spelling of defendant Veyona Shepherd's name. *See* dkt. 225 at 1.

1

# I.
# Motion to Strike Surreply

The medical defendants' unopposed motion to strike Mr. Jewell's surreply, dkt. [228], is **granted**. The clerk is directed to strike the surreply at docket 227.[2]

# II.
# Summary Judgment Standard

A motion for summary judgment asks the Court to find that a trial is unnecessary because there is no genuine dispute as to any material fact and, instead, the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). Whether a party asserts that a fact is undisputed or genuinely disputed, the party must support the asserted fact by citing to particular parts of the record, including depositions, documents, or affidavits. Fed. R. Civ. P. 56(c)(1)(A). A party can also support a fact by showing that the materials cited do not establish the absence or presence of a genuine dispute or that the adverse party cannot produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c)(1)(B). Affidavits or declarations must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on matters stated. Fed. R. Civ. P. 56(c)(4). Failure to properly support a fact in opposition to a movant's factual assertion can result in the movant's fact being considered undisputed, and potentially in the grant of summary judgment. Fed. R. Civ. P. 56(e).

In deciding a motion for summary judgment, the Court need only consider disputed facts that are material to the decision. A disputed fact is material if it might affect the outcome of the suit under the governing law. *Williams v. Brooks*, 809 F.3d 936, 941-42 (7th Cir. 2016). "A genuine

---

[2] Due to a discovery dispute, the Court previously denied the defendants' motions for summary judgment without prejudice to refiling. Dkt. 188. Mr. Jewell's surreply sought to attach his responses to the previous motions for summary judgment. The Court notes that his previous responses were not sworn and therefore would not have been considered as evidence at summary judgment had he filed them with his response to the renewed motions for summary judgment.

dispute as to any material fact exists 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Daugherty v. Page,* 906 F.3d 606, 609-10 (7th Cir. 2018) (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986)).

On summary judgment, a party must show the Court what evidence it has that would convince a trier of fact to accept its version of the events. *Gekas v. Vasilades*, 814 F.3d 890, 896 (7th Cir. 2016). The moving party is entitled to summary judgment if no reasonable fact-finder could return a verdict for the non-moving party. *Nelson v. Miller*, 570 F.3d 868, 875 (7th Cir. 2009). The Court views the record in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor. *Skiba v. Illinois Cent. R.R. Co.*, 884 F.3d 708, 717 (7th Cir. 2018). It cannot weigh evidence or make credibility determinations on summary judgment because those tasks are left to the fact-finder. *Miller v. Gonzalez*, 761 F.3d 822, 827 (7th Cir. 2014). The Court need only consider the cited materials, Fed. R. Civ. P. 56(c)(3), and is not required to "scour every inch of the record" for evidence that is potentially relevant to the summary judgment motion before them. *Grant v. Trustees of Indiana University,* 870 F.3d 562, 572-73 (7th Cir. 2017). Any doubt as to the existence of a genuine issue for trial is resolved against the moving party. *Anderson*, 477 U.S. at 255.

## II.
## Factual Background

The following facts are drawn from the undisputed evidence or, where disputed, are set forth in the light most favorable to Mr. Jewell, the non-moving party.

### A. The Parties

At all times relevant to his complaint, Mr. Jewell was incarcerated at Pendleton Correctional Facility (Pendleton). Indiana Department of Correction (IDOC) contracted with Wexford of Indiana, LLC (Wexford) to provide medical services to inmates at Pendleton. Bodkin

Declaration, dkt 135-4 at ¶ 11. Dr. Talbot was a physician and Michelle LaFlower was a nurse employed as a Health Service Administrator (HSA) by Wexford at Pendleton. Talbot Affidavit, dkt. 132-1 at ¶¶ 1-2; LaFlower Affidavit, dkt. 132-2 at ¶¶ 1-2. As an HSA, Ms. LaFlower's duties and responsibilities were primarily administrative in nature and included the review of complaints and grievances submitted by inmates regarding medical care but did not include the authority to change medical orders. Dkt. 132-2 at ¶ 3; ¶ 21. HSA LaFlower reviewed grievances that were submitted by Mr. Jewell. *Id*. at ¶ 4.

Dushan Zatecky was the Warden at Pendleton. Dkt. 135 at ¶ 2. Defendant Shepherd was a Grievance Specialist at Pendleton. Dkt. 135-4 at ¶¶ 4. Laura Bodkin is an Administrative Assistant at Pendleton. As part of her duties, she supervises grievance specialists. *Id*. at ¶¶ 2-3. Because neither Ms. Shepherd nor Ms. Bodkin are medical providers, they could not order medical treatment. *Id*. at ¶¶ 5, 9-10. Nikki Tafoya was a Quality Assurance Manager at IDOC. Although she is a registered nurse, she does not provide medical care to inmates. Dkt. 135-5 at ¶¶ 3, 13.

### B. Mr. Jewell's Medical Conditions

Mr. Jewell suffers from GERD, a chronic condition where acid from the stomach makes its way up into the esophagus. Patients that are diagnosed with GERD most often experience reflux more than a few times per week. There are a number of different treatments for GERD, including dietary modifications, H2 blockers, proton pump inhibitors, exercise, and elevation of the head during sleep. Dkt. 132-1 at ¶ 6.

In March of 2017, Mr. Jewell was seen by an outside gastroenterologist, Dr. Nisi, who diagnosed him with Barrett's Esophagus, a condition where the lining of the esophagus becomes

similar to that of the intestine or gastric glands. *Id*. at ¶ 7; Jewell Deposition, dkt. 132-2 at 8.[3] Barrett's esophagus is typically caused by persistent or chronic reflux but can occur in healthy patients. Symptoms are most often frequent heartburn and can at times include pain. In rare instances, Barrett's Esophagus can develop into esophageal cancer. However, the form of Barrett's esophagus that Mr. Jewell was diagnosed with is "short-segment," which is less likely to develop into cancer. Dkt. 132-1 at ¶ 7; dkt. 132-2 at 23.

Because of these conditions, Mr. Jewell was enrolled in Pendleton's institutional chronic care clinic, where he would be seen every few months by medical staff for management of his condition. Dkt. 132-1 at ¶ 5. On March 30, 2017, Mr. Jewell had a chronic care visit with Nurse Practitioner Wambui Murage, in which they discussed the result of his recent esophagogastroduodenoscopy (EGD) and biopsy. Dr. Nisi had recommended that Mr. Jewell receive a proton pump inhibitor because his biopsy was positive for Barrett's Esophagus. In response, Mr. Jewell was prescribed Prilosec, a proton pump inhibitor, and Zantac, an H2 blocker. *Id*. at ¶ 8; dkt. 132-4 at 12-15. Dr. Nisi also recommended a follow-up visit in 4-to-6 months and a repeat EGD in three years. *Id*. at 14. Mr. Jewell did not see Dr. Nisi for a follow-up visit in 2017.

### C. Pre-Lawsuit Treatment

Dr. Talbot saw Mr. Jewell on May 4, 2017. Mr. Jewell requested a citrate free diet because of his diagnosis of Barrett's Esophagus. Citrate is a derivative of citric acid. Examples of foods high in citric acid include lemons, limes, oranges, grapefruits and other similar fruits and juices. Dr. Talbot reviewed the IDOC special diet options with Mr. Jewell, but none were free of citrates. Dkt. 132-1 at ¶ 9; dkt. 132-4 at 9.

---

[3] The deposition was filed with the court as a .pdf document with four transcript pages on each page of the .pdf. The Court refers to the .pdf page numbers assigned by the Court's electronic docketing system.

In the past, the food-service provider at Pendleton offered a GERD diet. But at some point, the facility reduced its offering of special diets to allergies, low-calorie, high calorie, cardiac, and a few other exceptions. Dkt. 132-1 ¶ 32. Despite not having access to a special diet, Mr. Jewell did not have any significant fluctuations in his weight. Dkt. 132-3 at 20. He weighed 197 pounds on March 30, 2017, and 205 pounds on January 2, 2019. Dkt. 132-4 at 13, 19. Mr. Jewell did not request an alternative diet from Dr. Talbot in 2018 or 2019. Dkt. 132-4 at ¶ 38.

Dr. Talbot did not believe Mr. Jewell required a special diet. Furthermore, Dr. Talbot did not believe that the IDOC included citric fruits in its meals often, so Mr. Jewell would not have trouble avoiding them. Dkt. 132-1 at ¶¶ 9-11. Medical records reflect that Mr. Jewell had active prescriptions for Prilosec and Zantac at the time of his visit with Dr. Talbot and that those prescriptions continued. Dkt. 132-4 at 11.

On August 14, 2017, Mr. Jewell had a chronic care visit with NP Murage. He reported that his GERD was controlled on his current medication. He was instructed to avoid potential trigger foods, such as citrus, alcohol or coffee, and was also advised not to eat three hours prior to bedtime. His prescriptions for Prilosec and Zantac were continued. Dkt. 132-4 at 5-8.

Dr. Talbot saw Mr. Jewell for a chronic care visit on October 30, 2017. The medical records state that Mr. Jewell did not want Zantac. Dkt. 132-4 at 1. So, Dr. Talbot ordered that he continue receiving Prilosec but discontinued the order of Zantac. Dkt. 132-1 at ¶ 13. At that time, Mr. Jewell's Prilosec prescription was active through January 27, 2018, and NP Murage extended the prescription through April 21, 2018, before it expired. *Id*. at ¶ 14; dkt. 132-4 at 32-34. Mr. Jewell disputes that he told Dr. Talbot he wanted to discontinue Zantac. Dkt. 132-3 at 27.

Dr. Talbot testified that recent medical literature has highlighted the risks associated with long-term use of H2 blockers, such as further development of esophageal scarring and increased

6

progression of Barrett's esophagus. It is most often recommended that patients only receive an H2 blocker for 90 days, and only thereafter if it is absolutely necessary. As such, with patients that suffer GERD symptoms, physicians often will attempt to find a combination of lifestyle modifications and medications that can control symptoms, without the need for a chronic prescription of an H2 blocker. *Id*. at ¶ 30.

On April 30, 2018, Mr. Jewell had a chronic care visit with Nurse Practitioner Loretta Dawson. He reported that his GERD was stable, although he suffered from heartburn which was made worse by large meals and spicy foods. He was educated to avoid spicy foods, and his order of Prilosec was continued for one year, through April 3, 2019. Dkt. 132-1 at ¶ 15; dkt. 132-4 at 29-31).

On September 19, 2018, Mr. Jewell had a visit with Nurse Practitioner Elaine Purdue. He reported that his GERD was aggravated by fatty foods and acidic foods but was relieved by antacids or sitting up. While he reported reflux and sore throat, he did not have any signs of aspiration, chronic cough, dyspnea, hoarseness, nausea, or vomiting. He was advised to avoid potential trigger foods and decrease his weight. NP Purdue ordered a citrus-free diet. Dkt. 132-1 at ¶ 16; dkt. 132-4 at 26-28. Although medical staff could order such a diet, Aramark was the contractor responsible for providing inmates with meals consistent with the ordered diet. Dkt. 132-2 at ¶ 14.

On November 1, 2018, Mr. Jewell had another chronic care appointment with NP Purdue. Mr. Jewell reported that the order for a citrus-free diet had been discontinued. Dkt. 132-4 at 22. At his deposition, Mr. Jewell testified that he received a letter from Aramark employee Tonya Myers cancelling the diet. Dkt. 132-3 at 9.

NP Purdue again ordered a citrus-free diet. Dkt. 132-4 at 22-25. She later determined after a discussion with Wexford's Regional Medical Director that Mr. Jewell did not medically require a citrus-free diet because test results showed he did not have an allergy to citrus. On November 21, 2018, NP Purdue informed Mr. Jewell of this change and advised him to refrain from eating citrus due to his GERD. Dkt. 132-1 at ¶¶ 18-19; dkt. 132-4 at 21.

On November 13, 2018, Mr. Jewell submitted a grievance complaining that medical had discontinued his citrus-free diet. Dkt. 132-2 at ¶ 8; dkt. 132-5 at 7. On the same day, he filed another grievance complaining that had run out of omeprazole and requested that it be refilled. Dkt. 132-2 at ¶ 5; dkt. 132-5 at 7-11.

Ms. LaFlower was contacted by grievance specialist Veyona Shepherd on November 28, 2018, regarding these grievances. Dkt. 132-2 at ¶¶ 5, 9. Ms. LaFlower reviewed Mr. Jewell's electronic medical records and discovered that a citrus-free diet had been ordered for him on November 1, 2018, and was still active. Dkt. 132-5 at 10. She also discovered that Mr. Jewell received a supply of omeprazole on November 13, 2018, the day he filed his formal grievance. *Id*. at ¶ 6; dkt. 132-5 at 4. She reported her findings to Ms. Shepherd who responded to Mr. Jewell's grievances. Dkt. 135-5 at 3; dkt. 132-5 at 11. Mr. Jewell appealed, and Warden Zatecky responded that as a non-medical professional, he relied on reports from medical staff that Mr. Jewell received a supply of omeprazole on November 13, 2018. Dkt. 135-3 at 5. Mr. Jewell then appealed this response to the Department Grievance Manager. Laura Bodkin's only involvement with Mr. Jewell was to send him a receipt to notify him that the Department had received his appeal. Dkt. 135-4 at ¶8; dkt. 135-3 at 6. Defendant Tafoya reviewed Mr. Jewell's formal appeal and ruled that his grievance was founded, but that he had received appropriate care by the time his appeal was reviewed. Dkt. 135-3 at 7.

On January 2, 2019, Mr. Jewell had another follow-up with NP Purdue, in which he was again advised to avoid trigger foods, raise the height of his bed 4-6 inches near his head, decrease his weight, and to submit a healthcare request 7 to 10 days prior to the expiration of his date Prilosec order. NP Purdue renewed his Prilosec prescription for 180 days and resubmitted an order for a citrus-free diet. Dkt. 132-1 at ¶ 20; dkt. 132-4 at 18-20.

### D. Post-Lawsuit Treatment

On February 19, 2019, Mr. Jewell initiated this lawsuit. Dkt. 1. On August 19, 2019, Dr. Talbot ordered Zantac for Mr. Jewell Dkt. 132-3 at 26.

On September 30, 2019, the Court issued a preliminary injunction requiring the medical defendants to refer Mr. Jewell for treatment by an outside gastroenterologist, to follow the treatment recommendations of the gastroenterologist, and to order a citrus-free diet for Mr. Jewell. Dkt. 70.

On October 18, 2019, Mr. Jewell was evaluated by Dr. Nisi. Mr. Jewell reported relief with an H2 blocker such as Zantac, and Dr. Nisi encouraged him to continue taking it. Dr. Nisi also recommended an upper endoscopy for further evaluation in view of ongoing symptoms. Dkt. 132-4 at 37-40. On November 19, 2019, Dr. Nisi performed an upper endoscopy and biopsy. The results confirmed the diagnosis of Barrett's esophagus, with no fungal elements, no H pylori, no dysplasia, and no malignancy identified. *Id*. at 45-46.

### E. Lapses in Medication

Despite having a valid prescription for Prilosec (omeprazole) throughout the fall of 2018, Mr. Jewell was without this medication for approximately 56 days. Dkt. 132-3 at 10. Medical records show that Mr. Jewell submitted written healthcare request slips that were obtained and reviewed by nursing staff, which is the standard procedure. Dr. Talbot was not aware of lapses in

Mr. Jewell's medications. Dkt. 132-1 at ¶ 27. Typically, a physician or practitioner will make an order for medications. Nursing staff will then dispense the medication in accordance with the practitioner's orders and refill the medication when needed as long as there is an active order from the physician/practitioner. *Id*. at ¶ 28. Based upon Dr. Talbot's review the medical records, Mr. Jewell had a valid order for a proton pump inhibitor, such as Prilosec, to treat his GERD at all times relevant to this lawsuit. *Id*. at ¶ 29.

## III.
## Discussion

At all times relevant to Mr. Jewell's claim, he was a convicted offender. Accordingly, his treatment and the conditions of his confinement are evaluated under standards established by the Eighth Amendment's proscription against the imposition of cruel and unusual punishment. *See Helling v. McKinney*, 509 U.S. 25, 31 (1993) ("It is undisputed that the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment.").

Pursuant to the Eighth Amendment, prison officials have a duty to provide humane conditions of confinement, meaning, they must take reasonable measures to guarantee the safety of the inmates and ensure that they receive adequate food, clothing, shelter, and medical care. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To prevail on an Eighth Amendment deliberate indifference medical claim, a plaintiff must demonstrate two elements: (1) he suffered from an objectively serious medical condition; and (2) the defendant knew about the plaintiff's condition and the substantial risk of harm it posed but disregarded that risk. *Id*. at 837; *Pittman ex rel. Hamilton v. Cnty. of Madison, Ill.*, 746 F.3d 766, 775 (7th Cir. 2014). "A significant delay in effective medical treatment also may support a claim of deliberate indifference, especially where

the result is prolonged and unnecessary pain." *Berry v. Peterman*, 604 F.3d 435, 441 (7th Cir. 2010).

The defendants do not dispute that Mr. Jewell's GERD and Barrett's Esophagus constitute serious medical conditions. Instead, they argue that they were not deliberately indifferent to it.

### A. Dr. Paul Talbot

Dr. Talbot treated Mr. Jewell on May 4, 2017, and October 30, 2017. Each time, Mr. Jewell had an active prescription for omeprazole. Despite the prescription, Mr. Jewell testified that he ran out of omeprazole on multiple occasions in the fall of 2018 and had to request refills. Dr. Talbot was not involved in Mr. Jewell's treatment at that time. Furthermore, he was not responsible providing refills of medication with active prescriptions and he was not aware of the delays Mr. Jewell experienced in receiving his refills.

Although the parties dispute whether Mr. Jewell requested to stop his Zantac prescription when he met with Dr. Talbot in October 2017, Dr. Talbot testified that recent medical literature indicates that long term use of Zantac and other H2 blockers is associated with an increased risk of esophageal scarring and further progression of Barrett's esophagus—the very outcomes Mr. Jewell sought to avoid. Dkt. 132-1 at ¶ 30. Mr. Jewell acknowledged at his deposition that his previous gastroenterologist also warned him of the risks associated with long-term use of H2 blockers. Dkt. 132-3 at 27. Mr. Jewell also testified that he saw Dr. Talbot on August 19, 2019, and discussed both Prilosec and Zantac. Dr. Talbot then ordered Zantac for Mr. Jewell. *Id*. at 26.

Dr. Talbot was not responsible for providing meals to Mr. Jewell and he could not force Aramark to provide a diet to Mr. Jewell that Aramark did not offer to inmates. Regardless, Dr. Talbot did not believe that Mr. Jewell required a citrus-free diet, particularly because the meals provided by Aramark did not often contain citrus.

Finally, Mr. Jewell was seen by Dr. Nisi, his gastroenterologist in March of 2017. Dr. Nisi recommended a follow-up visit in six months which did not happen. But when he was re-evaluated by Dr. Nisi in 2019, his condition had not progressed.

The Seventh Circuit has explained that "[a] medical professional is entitled to deference in treatment decisions unless no minimally competent professional would have [recommended the same] under those circumstances." *Pyles v. Fahim*, 771 F.3d 403, 409 (7th Cir. 2014). However, a plaintiff may be able to "establish a departure from minimally competent medical judgment where a prison official persists in a court of treatment known to be ineffective." *Petties v. Carter*, 836 F.3d 722, 729–30 (7th Cir. 2016). And "[i]f a prison doctor chooses an easier and less efficacious treatment without exercising professional judgment, such a decision can also constitute deliberate indifference." *Id.* (internal citations and quotations omitted).

There is no evidence that Dr. Talbot deviated from professional norms when he discontinued Mr. Jewell's long-term Zantac prescription. Nor is there evidence that he treated Mr. Jewell between the 2017 visit when he discontinued Zantac and the 2019 exam when he resumed the order for Zantac.

Mr. Jewell has also failed to show that Dr. Talbot could have provided him a citrus-free diet in the spring of 2017, or that Dr. Talbot was responsible for the discontinuation of the citrus-free diet Mr. Jewell briefly received in late 2018. And, in any event, Dr. Talbot reasonably concluded that Mr. Jewell's ordinary prison diet did not include much citrus.

Finally, there is no evidence in the record that Mr. Jewell was harmed by not receiving a follow-up examination from his outside gastroenterologist, Dr. Nisi, in 2017. The results of his follow-up in 2019 indicated that his condition remained the same as had been documented by his visit to Dr. Nisi in 2017.

Dr. Talbot made reasonable treatment recommendations based on his medical judgment. There is no evidence that he deviated from professional norms. Dr. Talbot is therefore entitled to summary judgment.

### B. Health Service Administrator Michelle LaFlower

As a Health Service Administrator, Michelle LaFlower's duties and responsibilities were primarily administrative in nature. When contacted by the grievance specialist about Mr. Jewell's grievances, she reviewed Mr. Jewell's electronic medical records and discovered that a citrus-free diet had been ordered for him on November 1, 2018, and was still active. Dkt. 132-5 at 10. She also discovered that Mr. Jewell received a supply of omeprazole on November 13, 2018, the day he filed his formal grievance. *Id*. at ¶ 6; dkt. 132-5 at 4. She reported her findings to the grievance specialist, defendant Shepherd, who responded to Mr. Jewell's grievances. Dkt. 135-5 at 3; dkt. 132-5 at 11.

The record demonstrates that HSA LaFlower's only involvement with Mr. Jewell's care in this case was responding to his grievances. Each time she was contacted by the grievance officer, she reviewed Mr. Jewell's medical records and diet orders before responding to his grievances. She had no authority to intervene in his treatment plan, and there is no evidence that she was aware of the lapse in his medication before it was resolved. Accordingly, she was not deliberately indifferent to his medical needs. *Machicote v. Roethlisberger*, 969 F.3d 822, 828 (7th Cir. 2020) (holding health services manager was not liable where she had no knowledge of inmate's treatment, no authority to intervene, and no personal involvement beyond fielding a nurse's complaint about him).

Because no reasonable factfinder could find that HSA LaFlower acted with deliberate indifference, she is entitled to summary judgment.

**C. Correctional Defendants**

Prison officials may violate the Eighth Amendment if their failure to adequately investigate a prisoner's grievances delays his access to adequate medical care. *Perez v. Fenoglio*, 792 F.3d 768, 781 (7th Cir. 2015). On the other hand, if a prison official reasonably responds to a prisoner's complaints, then she lacks a "sufficiently culpable state of mind" to be deliberately indifferent. *Johnson v. Doughty*, 433 F.3d 1001, 1010-11 (7th Cir. 2006) (finding grievance counselor did not violate the Eighth Amendment where he researched inmate's complaint, learned that medical professionals had seen and diagnosed inmate with medical condition and determined that surgery was not required); *see also Burks v. Raemisch*, 555 F.3d 592, 594-95 (7th Cir. 2009) (affirming grant of summary judgment to prison complaint examiner who denied grievance as untimely "because she carried out her job exactly as she was supposed to").

Defendants Shephard, Zatecky, Bodkin, and Tafoya are entitled to summary judgment because the undisputed facts establish that they reasonably responded to Mr. Jewell's grievances. Each time he filed a grievance, defendant Shephard took action by forwarding the grievance to the appropriate person for a response, reviewing responses provided by medical staff, and responding to Mr. Jewell. When Mr. Jewell appealed, Warden Zatecky reasonably relied on reports from medical staff that Mr. Jewell was receiving appropriate medical care. When Mr. Jewell appealed this response, Laura Bodkin sent him a receipt to notify him that the Department had received his appeal. Defendant Tafoya reviewed Mr. Jewell's formal appeal and ruled that his grievance was founded, but that he had received appropriate care by the time his appeal was reviewed. Dkt. 135-3 at 7. There is no evidence that these defendants ignored Mr. Jewell's complaints or failed to

respond to them. They "were entitled to rely on the professional judgment of medical prison officials," and "nothing in [the medical] reports made it obvious that [Mr. Jewell] might not be receiving adequate care." *Id.* at 527–28. *Giles v. Godinez*, 914 F.3d 1040, 1050 (7th Cir. 2019).

For these reasons, defendants Shepard, Zatecky, Bodkin, and Tafoya are entitled to summary judgment.

### C. Wexford

To prevail on his claim against Wexford based on an unconstitutional policy or custom, Mr. Jewell must show that "he was deprived of a federal right" and "trace the deprivation" to a Wexford policy or custom. *Dean v. Wexford Health Sources, Inc.*, 18 F.4th 214, 235 (7th Cir. 2021). *Id*. The causation standard is "rigorous" and requires the plaintiff to show "a 'direct causal link' between the challenged municipal action and the violation of [the plaintiff's] constitutional rights." *Id*. (citations omitted). There is no evidence in the record that Wexford maintained any policy or custom that caused a violation of his rights. Further, there is no evidence that other inmates experienced lapses in medication or citrus-free diets to support his policy claim. *Hildredth v. Butler*, 960 F.3d 420, 426–27 (7th Cir. 2020) (denying prisoner's policy claim in part because he only introduced evidence about delays in his own healthcare and not that of other inmates). Wexford is therefore entitled to summary judgment.

### IV.
### Conclusion

For the reasons stated above, the defendants' motions for summary judgment, dkt. [213] and dkt. [218], are **granted**. Final judgment consistent with this Order, the Screening Order at dkt. [7], and the Order granting summary judgment to defendant McCullough at dkt. [111], shall now issue.

The medical defendants' unopposed motion to strike Mr. Jewell's surreply, dkt. [228], is **granted**. Mr. Jewell's motion for jury trial, dkt. [208], is **denied as moot**. His motion for the appointment of counsel, dkt. [210], is **denied** for the same reasons his previous motion was denied. *See* dkt. [95].

**IT IS SO ORDERED.**

Date: 3/4/2022

SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

Distribution:

CHRISTOPHER JEWELL
206774   H1-113
THE GEO GROUP
NEW CASTLE CORRECTIONAL FACILITY - Inmate Mail/Parcels
P.O. BOX A
NEW CASTLE, IN 47362

Douglass R. Bitner
KATZ  KORIN CUNNINGHAM, P.C.
dbitner@kkclegal.com

Jeb Adam Crandall
BLEEKE DILLON CRANDALL ATTORNEYS
jeb@bleekedilloncrandall.com

Christopher Andrew Farrington
BLEEKE DILLON CRANDALL ATTORNEYS
drew@bleekedilloncrandall.com

Erica Lee Sawyer
INDIANA ATTORNEY GENERAL
Erica.Sawyer@atg.in.gov